UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORTHWEST ENVIRONMENTAL
ADVOCATES, a non-profit corporation,

       Plaintiff,

  v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, a United States
Government Agency; NATIONAL MARINE
FISHERIES SERVICE, a part of the National
Oceanic and Atmospheric Administration, a
part of the United States Department of
Commerce; UNITED STATES FISH AND
WILDLIFE SERVICE, a part of the United
States Department of the Interior,

       Defendants,

STATE OF OREGON; and NORTHWEST
PULP AND PAPER ASSOCIATION,

       Intervenor-Defendants.

Civil No.  05-1876-HA

OPINION AND ORDER

HAGGERTY, District Judge:

      Plaintiff challenges decisions made by federal agencies related to the State of Oregon's

water quality standards.  Before the court is plaintiff's Motion to Complete Administrative

Records [152].  For the following reasons, plaintiff's motion is granted as follows.

## I.    BACKGROUND

Plaintiff is a non-profit environmental organization.  It challenges three federal agencies for decisions related to water quality standards for the State of Oregon.  Plaintiff brings suit under the Federal Water Pollution Control Act (commonly known as the Clean Water Act (CWA)), 33 U.S.C. § 1251(a) *et seq*., the Endangered Species Act (ESA), 16 U.S.C. § 1531 *et seq*., and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*. Specifically, plaintiff challenges the Environmental Protection Agency's (EPA) approval of Oregon's water quality standards, and the final decisions of the Fish and Wildlife Service (FWS) and the National Marine Fisheries Service (NMFS) (collectively "the Services") which concluded that EPA's approval of the water quality standards was not likely to jeopardize fish species listed as threatened or endangered under the ESA.  Federal defendants have produced administrative records for judicial review in this case but have sought to shield numerous documents under the attorney-client privilege, the attorney work product doctrine, and the deliberative process privilege.  Plaintiff challenges the assertion of the deliberative process privilege with respect to several hundred documents and requests that this court compel federal defendants to complete the administrative record.

### a.    CWA

The purpose of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  The CWA requires each state to develop water quality standards for all waterbodies within the jurisdiction of that state.  The water quality standards designate specific uses for the waters involved and then establish numeric and narrative water quality criteria in order to protect those uses.  33 U.S.C.  §

1313(c)(2).  Each state must review and, as appropriate, modify its water quality standards at least once every three years and then submit those revised water quality standards to the EPA for review.  33 U.S.C. § 1313(c)(1).  The EPA must then review the water quality standards and approve those water quality standards that meet the requirements of the CWA.  33 U.S.C. § 1313(c)(3).  The revised water quality standards do not become effective until approved by EPA.  40 C.F.R. § 131.21(c).  If EPA rejects the revised water quality standards, the state has ninety days to further revise its water quality standards.  If the state fails to act within ninety days, EPA shall "promptly prepare and publish proposed" water quality standards for the state. 33 U.S.C. § 1313(c)(4).

**b.    ESA**

The purposes of the ESA are to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved," and "to provide a program for the conservation" of such species.  16 U.S.C. § 1531(b).

Section 7(a)(2) of the ESA requires federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification" of such species' critical habitat.  16 U.S.C. § 1536(a)(2).  Whenever a federal agency, such as EPA, determines that a proposed action "may affect listed species or critical habitat," that agency must prepare a biological assessment on the effects of the action and consult with the Services to determine whether the agency action is likely to result in jeopardy to that species or its critical habitat.  50 C.F.R. § 402.14(a); 16 U.S.C. § 1536(a).  Once consultation is initiated, the Services are responsible for reviewing all relevant information and formulating a biological opinion (BiOp) as to whether the action is likely to result in jeopardy to a listed species.  50 C.F.R. § 402.14(g).

3       - OPINION AND ORDER

In making this determination, EPA must provide the Services with a biological assessment, and the Services "shall use the best scientific and commercial data available." 50 C.F.R. § 402.14(a); 16 U.S.C. § 1536(a); 16 U.S.C. § 1536(a)(2). If the Services determine that an agency's action is likely to jeopardize the continued existence of a listed species, the Services must suggest reasonable and prudent alternatives to the proposed action, if any exist, that would not result in such jeopardy. 16 U.S.C. § 1536(b)(3).

c.      **Factual Background**

In 1996, the State of Oregon adopted revisions to its temperature and intergravel dissolved oxygen (IGDO) water quality criteria under the CWA and submitted those revisions to EPA for approval. The revisions were approved in part, however, EPA rejected a sixty-eight degrees Fahrenheit temperature criterion for salmonid migration and rearing in the Lower Willamette River. Oregon took no action within ninety days of EPA's rejection, and the EPA did nothing to promulgate its own criterion. This court then ordered EPA to promulgate its own revised water quality standards and to promulgate an antidegradation plan for Oregon's waters. *NWEA v. EPA*, 268 F. Supp. 2d 1255 (D. Or. 2003). Additionally, this court held that EPA's approval of certain water quality criteria was arbitrary and capricious, and held that NMFS's determination that the revised water quality standards would not jeopardize listed salmonid species was arbitrary and capricious. *Id*. at 1265-1273.

On October 10, 2003, EPA published *EPA's Proposed Rule for Water Quality Standards for the State of Oregon*, 68 Fed. Reg. 58,758. The proposed rule was never finalized and on December 10, 2003, Oregon submitted revised water quality standards for temperature, IDGO, and antidegradation to EPA for approval. Pursuant to the ESA, EPA initiated consultation with the Services regarding the potential impacts of EPA's approval of Oregon's revised water quality

standards on listed salmonid species.  The Services each prepared BiOps concluding that the effects of EPA's approval were not likely to jeopardize the continued existence of listed salmonid species nor destroy or otherwise adversely modify their designated critical habitat.  On March 2, 2004, EPA approved Oregon's revised water quality standards.  On December 13, 2005, plaintiffs filed suit seeking judicial review of EPA's decision to approve Oregon's revised water quality standards and the Services' "no jeopardy" BiOps.

On June 29, 2007, plaintiff filed a Motion to Complete Administrative Records [85] requesting the release of documents related to the development of the Regional Temperature Guidance document utilized by EPA to help it develop water quality standards.  On January 8, 2008, this court granted plaintiff's Motion to Complete Administrative Records requiring the release of documents related to the development of the Regional Temperature Guidance, as well as the production of privilege logs detailing those documents federal defendants excluded from the administrative record under a claim of privilege.  Plaintiff then challenged the invocation of the deliberative process privilege with respect to several hundred documents.  These documents include draft scientific documents, email conversations, and agency guidance documents.  On November 20, 2008, this court issued an order allowing plaintiff to select twenty documents withheld by EPA, ten documents withheld by the FWS, and ten documents withheld by the NMFS for a partial *in camera* review to determine whether federal defendants properly invoked the deliberative process privilege.

## II.    <u>DISCUSSION</u>

The deliberative process privilege is a common-law privilege that allows executive agencies to shield "confidential inter-agency memoranda on matters of law or policy" from public disclosure.  *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir.

1988).[1]  The purpose of the privilege is to promote sound governmental decision-making.  "By maintaining the confidentiality of the give-and-take that occurs among agency members in the formulation of policy, the deliberative process privilege . . . encourages frank and open discussions of ideas, and, hence, improves the decisionmaking process."  *Id*. at 1117.  Without such a privilege, agency members may be induced to temper the candor with which they express their opinions through a fear of public scrutiny, thereby diminishing the quality of the agency's decisions.  *Id*.

In order to be withheld under the deliberative process privilege, "a document must be *both* (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative' meaning 'it must actually be related to the process by which policies are formulated.'"  *Id*. (quoting *Jordan v. U.S. Dep't. of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)).  A predecisional document is "part of the deliberative process, if the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency."  *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1988) (alternations in original and quotation marks omitted).  Such documents "may include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'"  *Id*. (citing *Coastal States Gas Corp. v. Dep't. of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  As a general matter, factual material is not protected by the privilege except where that material would reveal

---

[1]While the deliberative process privilege is a common-law privilege, it has been incorporated into Exemption 5 of the Freedom of Information Act (FOIA).  Exemption 5 of the FOIA permits nondisclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Federal courts regularly apply FOIA precedent when interpreting the deliberative process privilege, and many of the cases cited in this opinion discuss the deliberative process privilege within the context of the FOIA.

the deliberative process. *Nat'l Wildlife Fed'n*, 861 F.2d at 1117.

The deliberative process privilege is a qualified privilege. *See F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). Materials that are otherwise protected may become a part of the administrative record if the litigant's "need for the materials and the need for accurate fact finding override the government's interest in non-disclosure." *Id*. Among the factors a court should consider in making this determination are: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id*. Other factors may include: "(5) the interest of the litigant, and ultimately society, in accurate judicial fact finding; (6) the seriousness of the litigation and the issues involved; (7) the presence of issues concerning alleged governmental misconduct; and (8) the federal interest in the enforcement of federal law." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003).

Plaintiff advocates a narrow view of the deliberative process privilege. Plaintiff cites *Greenpeace v. National Marine Fisheries Service* (*Greenpeace*), to support their contention that the deliberative process privilege only applies to policy-implicating documents. 198 F.R.D. 540, 543 (W.D. Wash. 2000). In *Greenpeace*, environmental plaintiffs challenged NMFS's determination that reasonable and prudent alternatives to the management of a fishery would not result in jeopardy to a listed sea lion species. The NMFS withheld documents under the deliberative process privilege and plaintiffs filed a motion to compel the completion of the administrative record. The district court held that "only those materials that bear on the formulation or exercise of agency policy-oriented judgment fall within the privilege." *Id.* Additionally, the court held that factual material is "protected only to the extent it reflects an

7    - OPINION AND ORDER

agency's 'preliminary positions or ruminations about how to exercise discretion on some policy matter.'" *Id.* (quoting *Petroleum Info. Corp. v. U.S. Dept. of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992)).

Plaintiff asserts that none of the challenged documents in this case are policy-implicating documents and, therefore, all must be released. In *Greenpeace*, the court held that because § 7(a)(2) of the ESA does not permit discretionary policy making, none of the documents withheld by NMFS could be withheld from disclosure. *Id.* at 544. The court reasoned that because a "determination of jeopardy or adverse modification is limited to objective, fact-based scientific conclusions . . . the process as a whole is not 'deliberative' within the meaning of the privilege." *Id.* Plaintiff contends that this case is similar to *Greenpeace* in that none of the challenged decisions are related to policy decisions and, as such, none of the challenged documents may be withheld under the deliberative process privilege. Plaintiff argues that each of the challenged decisions is primarily a scientific decision that does not implicate discretionary agency policymaking. As noted by the Washington district court, the § 7(a)(2) consultation process merely requires EPA to provide the Services with a biological assessment and requires that the Services "use the best scientific and commercial data available" in making the jeopardy determination. 50 C.F.R. § 402.14(a); 16 U.S.C. § 1536(a); 16 U.S.C. § 1536(a)(2). Furthermore, plaintiff argues that the approval of Oregon's water quality standards is also not a policy decision because EPA is directed to approve proposed water quality standards if the "agency determines that such standards meet the requirements" of the CWA. 33 U.S.C. § 1311(c)(3).

Lastly, plaintiff contends that the deliberative process privilege must be drawn especially narrowly in this case to allow judicial review under the APA. Plaintiff argues that allowing

defendants to shield all drafts and internal documents with the deliberative process privilege would frustrate the purpose of judicial review under the APA.  Judicial review of agency decisions made under the CWA and ESA is governed by the APA and such decisions will be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(a).  Plaintiff argues that because judicial review of agency decisions should be made on the "whole record," a broad interpretation of the deliberative process privilege would be inimical to effective judicial review as the court would be unable to determine "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of a problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency."  *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Defendants offer a much broader conception of the deliberative process privilege and contend that the view of the deliberative process privilege advocated by plaintiff is unduly narrow.  To support their view of the privilege, defendants cite *National Wildlife Federation* for the proposition that, in order to qualify for the privilege, a document need not have played an important role in the process, as long as it was a "part of that process."  Defs.' Opp'n to Pl's. Mot. at 15.  In *National Wildlife Federation*, the Ninth Circuit held that rather than "determining whether the material itself was essentially deliberative . . . we should focus on whether the document in question is a part of the *deliberative process*."  861 F.2d at 1118.

Defendants also assert that the deliberative process privilege applies to the types of scientific decisions at issue in this case and that *Greenpeace* is at odds with *National Wildlife*

*Federation*'s process oriented approach.  Defendants argue that scientific decisions are deliberative, develop over time, and require the free flow of ideas within the decisionmaking agency.  Defendants contend that the privilege applies not only to the formation of government policy, but also to governmental decisionmaking generally.

Defendants cite three district court cases to support their view that *Greenpeace* was decided incorrectly and is inconsistent with both Ninth Circuit precedent and cases from other circuits.  In *Center for Biological Diversity v. Norton* [1], an Arizona district court held that the deliberative process privilege extends beyond those documents that are part of the process by which policy is formulated.  No. 01-409, 2002 WL 32136200, at *2 (D. Ariz. July 24, 2002).  Rejecting *Greenpeace*, the district court permitted FWS to withhold documents related to the designation of critical habitat for the Mexican spotted owl under § 4 of the ESA.  *Id.*  In *Center for Biological Diversity v. Norton* [2], a New Mexico district court declined to follow *Greenpeace* an upheld the decision of FWS to withhold documents related to an ESA § 4 listing decision.  336 F. Supp. 2d 1155, 1159 (D. N.M. 2004).  The court held that the privilege "applies to the process for formulating government 'decisions' as well as government 'policies.'"  *Id.* (citations omitted).  Lastly, in *Ocean Mammal Institute v. Gates*, a magistrate judge in the District of Hawaii allowed NMFS to assert the privilege in the context of a § 7(a)(2) consultation.  No. 07-00254, 2008 WL 2185180 (D. Haw. 2008) (discussing both *Center for Biological Diversity* cases and adopting their analysis).[2]

Defendants do not agree that the deliberative process privilege should be interpreted

---

[2] This court notes that *Greenpeace* has been followed by at least one other court in the Ninth Circuit.  In *Greenpeace Foundation v. Mineta*, No. 00-00068 (D. Haw. Oct. 27, 2000), Judge King found *Greenpeace v. NMFS* to be persuasive and held that the deliberative process privilege did not apply to NMFS's § 7 consultation documents.  This order was not published and is not available online, however it was discussed in *Ocean Mammal Institute,* 2008 WL 2185180, at *2.

more narrowly in APA cases, and argue that the current administrative record as it currently

exists is more than adequate to allow effective judicial review of the challenged decisions.

Defendants posit that "so long as the record presented to the Court is sufficient to explain the

basis for the agency's decision," not every potentially relevant document must be added to that

record. Defs.' Opp'n to Pl.'s Mot. at 12. Moreover, defendants argue that claims of privilege

continue to be recognized despite the APA's "whole record" requirement. *See Ariz. Rehab.*

*Hosp. v. Shalala*, 185 F.R.D. 263, 268 (D. Ariz. 1998).

    As a primary matter, this court largely agrees with defendants' assertion that the

deliberative process privilege is not especially narrow in cases involving APA judicial review.

While APA review is generally done on the "whole record," not every potentially relevant

document must be included in the record. At the same time, this court agrees with plaintiff that

an overly broad interpretation of the privilege could impair the ability of a court to effectively

evaluate agency actions under the APA. However, this court is confident that the administrative

record will be more than adequate to allow judicial review under the APA once defendants have

completed the record in accordance with the standards set forth below.

    This court finds the view of the privilege offered by plaintiff to be overly narrow and that

offered by defendants to be overly broad. In conducting its *in camera* review of the challenged

documents, this court has utilized the "process" oriented approach set out in *National Wildlife*

*Federation*. Rather than focus exclusively on the nature of each document, the court has

analyzed how those documents fit into the deliberative process, while keeping in mind the

purpose of the privilege. In order to qualify for the privilege, a document must not only be

"predecisional," but also "deliberative." A document is only "deliberative" if its disclosure

would frustrate the purposes of the privilege. *Carter v. U.S. Dept. of Commerce*, 307 F.3d 1084,

11      - OPINION AND ORDER

1089 (9th Cir. 2002). Those documents that do not express subjective opinions or whose release

is unlikely to expose an agency's decisionmaking process such as to discourage "frank and open

discussions of ideas" must be released. *National Wildlife Fed'n*, 861 F.2d at 1117.

At base, plaintiff offers a view of the deliberative process privilege that only protects

documents integrally related to policy decisions while defendants would apply the privilege to

any document that precedes a governmental decision. A document need not have played a

critical role in a policy decision before it becomes privileged; however, it must be more than

simply a predecisional document. Applying the privilege to all documents which precede a

governmental decision risks expanding the privilege beyond its purpose, to a point where it

protects all documents which precede a governmental action. Such an interpretation ignores the

"deliberative" requirement and is antithetical to democratic values of transparent government.

*National Wildlife Fed'n*, 861 F.2d at 1124 (Pregerson, J., concurring).

Much has been made of the *Greenpeace* decision, both by plaintiff and defendant. This

court does not read *Greenpeace* to be inconsistent with *National Wildlife Federation* to the

extent that the court in *Greenpeace* also used the process oriented approach. In *Greenpeace*, the

court "focused on the nature of the agency *process* when making a determination of jeopardy and

adverse modification under the ESA." 198 F.R.D. at 544. The *Greenpeace* court simply held

that the decisions being made were in no way deliberative and, as such, the documents created

prior to those decisions could not be a part of a deliberative process. In essence: where there are

no deliberations, there can be no deliberative process.

Although *Greenpeace* applied the correct standard, this court does not agree with its

conclusion that no documents related to the § 7(a)(2) consultation process are deliberative.

However, this court does find that relatively few § 7(a)(2) consultation documents qualify for the

12    - OPINION AND ORDER

deliberative process privilege simply because of the nature of the decisions being made.  The EPA is charged with providing quality scientific information and the Services are charged with analyzing that information.  50 C.F.R.  § 402.14(a); 16 U.S.C. § 1536(a); 16 U.S.C. § 1536(a)(2).  Congressionally mandated scientific decisions, such as those made under § 7(a)(2), are less likely to result in the creation of documents which might "expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency."  *Assembly of Ca.*, 968 F.2d 916 at 920.  As such, this court is ordering defendants to release a substantial portion of the documents that came before this court for *in camera* review.  In particular, defendants must release most of the draft scientific documents that have been withheld until this point.

After an *in camera* inspection of the documents, this court is satisfied that disclosure of these largely scientific drafts is unlikely to harm future agency decisionmaking or to result in embarrassment to the agencies.  Defendants cite *National Wildlife Federation* and argue that "[m]aterials that allow the public to reconstruct the predecisional judgments of the administrator are no less inimical" to the privilege's "goal of encouraging uninhibited decisionmaking."  861 F.2d at 1122.  The fact that plaintiff could use the drafts to reconstruct the decisionmaking process in this case is irrelevant.  In *National Wildlife Federation*, the protected documents disclosed the "give-and-take" of the Forest Service in considering alternative courses of action.  Here, the decisions at issue were not open to discretionary decisionmaking and the documents reflect this fact.  As a general rule, these documents lay out the law applicable to the decisions at hand, discuss the relevant science, and apply the law to that science.  These are relatively polished drafts, and the recreation of the decisionmaking process should in no way embarrass the agencies.

The release of a preliminary draft that may treat scientific information differently than it

is treated in the final draft, or which reaches conclusions later modified, should not discourage candid discussions within the agencies. Many of the scientific questions dealt with in these drafts are difficult, and agency decisions are not overturned simply because of a change of position on a difficult issue. The agencies will have the opportunity to defend the scientific rigor of their decisions and the reasons for choosing to utilize the scientific information they ultimately relied upon. The agencies are charged with using the best scientific information available. Whether the agencies are, in fact, using the best scientific information is a question properly before the court. Indeed, this is precisely the sort of information that ought to be in front of the court when it determines whether the decisions made by the agencies were arbitrary, capricious, or otherwise not in accordance with law.

While the court is ordering defendants to release some of the withheld documents, there are still many documents that qualify for the privilege and were properly withheld. These documents express preliminary staff views or tentative opinions. They represent internal discussions concerning the method by which information is to be analyzed or how the law is to be applied to that information. Some of these documents express doubt or confusion regarding the information before the agency or how it should be interpreted. Others are the fragmented thoughts of individuals, or embryonic draft documents that risk misinterpretation should they be subject to disclosure. Although some of these drafts are of a scientific nature, substantial portions of these unpolished scientific drafts contain the personal views of agency staff or contain questions concerning the accuracy of the information or analysis contained within the draft. Some of these documents are emails requesting clarification on issues before the agency, or discussing the manner in which the agency plans to move forward. These documents represent the give-and-take of the agencies' internal deliberations, and their disclosure would

14      - OPINION AND ORDER

discourage such deliberations. Accordingly, these documents are appropriately considered a part of the "deliberative process."

Because the deliberative process privilege is a qualified privilege, this court has reviewed those documents protected by the deliberative process to determine whether they should be released despite their privileged nature. This court has concluded that the balance of factors weighs against the disclosure of these privileged documents in all but one instance.

The FWS's Withheld Document 55 contains a string of emails between FWS and EPA employees regarding the proper temperature criteria for the protection of bull trout in rearing and spawning areas. In one of these emails, an EPA employee suggests that FWS ought to reconsider their recommendation of a seven day average temperature criteria of eleven degrees Celsius. The EPA employee suggests that eleven Celsius is too conservative, might set unattainable expectations, and ultimately could undermine the credibility of the water quality standards program. In response to this email, a FWS employee writes to other FWS employees and states that this is where "science and policy collide and so we need to incorporate the 'feasibility' standard as well as the biological standard in our position."

This chain of emails suggests that FWS was considering factors other those Congress intended them to consider. Although FWS is charged with using "the best scientific and commercial data available," this discussion of the seven day average temperature criteria for bull trout indicates they were considering non-scientific factors.[3]

Of the eight factors referenced above, all but two of those factors weighs in favor of

---

[3] At this time, the court is not passing judgment on the appropriate temperature criteria for the protection of bull trout. The court notes that while the FWS was considering factors they ought not to have considered, it is entirely possible that their final decisions were scientifically sound and adequately protective of bull trout.

disclosing this email chain. This evidence is relevant, it is otherwise unavailable to plaintiff, the government's role in the litigation favors disclosure as do society's interest in accurate judicial fact finding, the seriousness of the litigation, and the federal interest in the enforcement of federal laws. Because there have been no allegations of governmental misconduct, the seventh factor weighs neither in favor of, nor against disclosure. The only factor that weighs against disclosure is the extent to which it would hinder frank and open deliberations. However, given that this was a policy discussion that probably should not have taken place, the fact that the disclosure of this information may result in some embarrassment to defendants does not outweigh the other six factors. That the release of this document may discourage inappropriate policy discussions may in fact lead to better agency decisionmaking. Additionally, this court has balanced the factors keeping in mind that in enacting the ESA, Congress "spoke[] in the plainest words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (U.S. 1978). Thus, the plaintiff's "need for the materials and the need for accurate fact finding " overrides the government's interest in non-disclosure in this instance. *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d at 1161.

III.     **ORDER**

        In compliance with this order, defendants shall release the following withheld documents that this court has determined not to be privileged: EPA documents- DMK (CWA) 21, KC 28, HQ 30, JP (CWA) 34, DMK (CWA) 48, HQ 66, HQ 144, and HQ 176; FWS documents- 6, 13, 17, 34, 39, and 40; and NMFS documents- 13, 21, 28, and 47. FWS document 36 must also be released; however, defendants may redact the comments found in the margins prior to its release. FWS document 55 must be released even though it is a part of the deliberative process because

16      - OPINION AND ORDER

this court has determined that the balance of factors weighs in favor of disclosure.

Additionally, defendants must reconsider their use of the deliberative process privilege and release those documents that do not meet the standards set forth in this Opinion. The parties shall meet and confer within one week to develop a schedule for compliance with this Order and any further briefing regarding the administrative records. The parties shall file with the court, by February 27, 2009, a joint status report and proposed schedule.

## CONCLUSION

For the foregoing reasons, this court grants plaintiff's Motion to Complete Administrative Records [152].

IT IS SO ORDERED.

DATED this  11  day of February, 2009.

                                   /s/ Ancer L. Haggerty
                                   Ancer L. Haggerty
                                   United States District Judge